UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          Chapter 13

CAROLYN G. BROWN,                               Case No. 19-13865 (MEW)

                          Debtor.
------------------------------------------------------------x
MILTON DAVIS,                                   Adv. Pro No. 021-_____

                         Plaintiff,

       against

COLUMBUS PARK OWNERS, INC. and
CAROLYN G. BROWN (as a necessary party),

                     Defendants.
------------------------------------------------------------x

## COMPLAINT

The Plaintiff herein, Milton Davis (sometimes the "Plaintiff"), by his attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for his Complaint against the defendants herein, Columbus Park Owners, Inc. ("Co-op Board") and Carolyn G. Brown, as a necessary party, alleges as follows:

## PRELIMINARY STATEMENT

1. Despite overcoming multiple bankruptcy filings commenced by Carolyn G. Brown (the "Debtor") over a period of five years (the last being this Chapter 13 case filed on December 5, 2019), the Plaintiff continues to be denied due recognition of his rights as a secured creditor. As a result, Plaintiff remains stymied in obtaining title to the subject cooperative apartment following completion of a foreclosure process expressly authorized by the Court pursuant to Order entered on January 28, 2020 (ECF No. 16), a copy of which is annexed hereto as Exhibit "A".

1

2. This time, however, the resistance is coming from an unanticipated source, namely the Co-op Board, which is improperly refusing to acknowledge the authority of the foreclosure process as a means to recapture collateral and obtain title of the subject apartment following exercise of Plaintiff's lien rights.

3. The Co-op Board's refusal to recognize the foreclosure and transfer title to the Plaintiff is predicated upon the false premise that somehow Plaintiff did not proceed under a judicially authorized foreclosure process. Nothing could be further from the truth, as this Court held numerous hearings on multiple occasions to address the enforceability of the Plaintiff's loan documents. In the end, the Court overruled all objections lodged by the Debtor, and authorized the Plaintiff to proceed to enforce his rights and foreclose on the subject apartment.

4. Indeed, the Bankruptcy Court presided over a long litigation history, and knows first-hand that Plaintiff employed proper judicial process. Yet, in the wake of the Co-op Board's refusal to recognize the foreclosure, Plaintiff is compelled to invoke this Court's supervisory jurisdiction to enforce and interpret its own orders to obtain final relief. Given the tremendous time and effort employed by the parties and the Court alike, it would be a travesty of justice if the Co-op Board can unilaterally subvert the entire process by arbitrarily refusing to accept the results of the foreclosure process, and deny Plaintiff the benefit of his collateral.

**PARTIES**

5. Plaintiff is an individual residing in the State of New York and previously filed a secured claim in each of the Debtor's multiple bankruptcy cases. Based upon his stats as a secured creditor, Plaintiff obtained relief from this Court to proceed with the foreclosure of Apartment 13C at 100 West 94th Street, New York, NY 10025 (the "Co-op Unit") under a series of Orders described herein.

6. The Co-op Board is a New York corporation which issued the proprietary lease for the Co-op Unit and corresponding stock certificate to the Debtor and is currently refusing to recognize Plaintiff's rights as a foreclosing creditor.

7. Carolyn G. Brown is the Debtor herein, and is named as a necessary party by virtue of her former ownership of the Co-op Unit and current possession thereof.

## JURISDICTION

8. The Bankruptcy Court has core jurisdiction over this Adversary Proceeding to enforce and interpret its own orders entered in the Debtor's Chapter 7 and Chapter 13 cases. Additionally, this Adversary Proceeding will allow for the final administration of this last bankruptcy case and eliminate any potential issue over the ownership Co-op Unit going forward.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. Pursuant to a certain note dated October 9, 2012, the Debtor's affiliate, SMM Investors LLC, borrowed the principal sum of $270,000 (the "Loan") from Woodbridge Mortgage Investment Fund I, LLC ("Woodbridge").

10. The Loan was personally guaranteed by the Debtor and secured by a pledge of the Debtor's right, title, and interest, in and to the Co-op Unit (the "Collateral") under a New York Cooperative Loan and Security Agreement ("Security Agreement"), related UCC financing statements, and Assignment of Proprietary Lease and Stock Power (the "Collateral Documents").

11. In connection with the Loan, the Co-op Board executed a standard form "Recognition Agreement" which provides, *inter alia*, that "nothing contained herein shall limit any rights [Woodbridge and its successors and/or assigns] may have to dispossess [Brown]

pursuant to law or realize upon [Woodbridge and its successors and/or assigns] security in accordance herewith."

12. Following a maturity default under the Loan in 2014, Woodbridge instituted foreclosure proceedings under the Uniform Commercial Code. During the pendency of the foreclosure process, on April 15, 2015, Woodbridge assigned the loans and related security interest to Plaintiff.

13. After Plaintiff continued with the foreclosure sale, the Debtor filed her first bankruptcy case on April 11, 2015 to stay the proceedings. This initial Chapter 13 case was subsequently dismissed for cause upon the motion of the Chapter 13 Trustee on December 16, 2015.

14. Following dismissal of the first case, the Plaintiff re-instituted foreclosure proceedings, scheduling a UCC Sale for June 5, 2018, only to see the Debtor file her second bankruptcy case (18-11720) on June 4, 2018, to again invoke the automatic stay.

15. This second bankruptcy case was actively prosecuted, and came to involve extensive litigation over a number of issues relating to enforceability of the underlying loan documents and the Debtor's efforts to stave-off a foreclosure sale.

16. Ultimately, however, Plaintiff established the *bona fides* of his secured claim and defended all efforts by the Debtor to further delay the foreclosure, including receipt of a favorable trial decision on the issue of whether the Co-op Unit constituted the Debtor's residence (*See,* Decision dated August 16, 2019 [(Adv. Pro. No. 19-01100) (ECF No. 24)]).

17. Having found that the Debtor did not reside in the Co-op Unit, the Court ultimately granted Plaintiff's motion to vacate the automatic stay and permitted a second

foreclosure sale to proceed.  A copy of the October 2, 2019 Order is annexed hereto as <u>Exhibit</u> "B" [(Case No. 18-11720) (ECF No. 56)], and a new sale was noticed for December 6, 2019.

18. On December 5, 2019, the Debtor commenced her third and current bankruptcy case, invoking an automatic stay yet again, and sought Chapter 13 relief despite the Debtor's still pending Chapter 7 case.

19. Promptly after the third filing, the Court held hearings on December 9, 2019, December 11, 2019, and December 16, 2019, and, ultimately, issued its own Order to Show Cause dated December 16, 2019 as to why, among other issues, "the Court should not grant relief from automatic stay in favor of Davis in order to permit a UCC foreclosure sale to be completed."  (ECF No. 11).  A copy of the Court's order to show cause is annexed hereto as <u>Exhibit</u> "C".

20. Importantly, in the Court's order to show cause, Plaintiff was permitted to re-notice the foreclosure "to prevent unnecessary delay and to protect the interests of Davis … to the [Collateral], except that such sale shall not be scheduled to occur any earlier than January 20, 2020 …" subject to the Debtor's right to demonstrate why the automatic stay should remain in place.

21. Despite being afforded multiple opportunities at staving-off foreclosure, the Debtor failed to establish cause at the hearing on January 16, 2020, and this Court vacated the automatic stay imposed by the Chapter 13 filing "to permit the completion of the UCC foreclosure sale" by Order dated January 28, 2020 (*See,* <u>Exhibit</u> "A").

22. Thereafter, the foreclosure sale was duly convened and conducted by Matthew D. Mannion, licensed auctioneer.

5

23. The Plaintiff's bid in the sum of $653,641.91 was declared the high bid by Mr. Mannion.

24. On February 4, 2020, Plaintiff, by and through his attorneys, informed the Court of the completed foreclosure sale by filing a Notice of Completion of UCC Sale [(Case No. 18-11720) (ECF No. 70)].

25. On the same day, February 4, 2020, Plaintiff's attorneys also provided the Co-op Board with a Certificate of Sale and advised the Co-op Board that "pursuant to Section 5.3(viii) of the Proprietary Lease, the Co-op's Board's right of first refusal expires 30 days therefrom."

26. While the Co-op Board did not act on this right of first refusal, or exercise any other rights, it nevertheless refused to transfer title of the Co-op Unit to the Plaintiff and demanded that Plaintiff submit an application.

27. Without waiving any of his rights, on April 24, 2020, Plaintiff submitted an application to the Co-op Board in an effort to facilitate a smooth transition.

28. On May 4, 2020, the Co-op Board summarily denied the application without explanation.

29. Thereafter, following an exchange of multiple rounds of correspondence between the parties' respective counsel, Plaintiff received a final rejection letter on November 23, 2020, indicating, in substance, that the Co-op Board's rejection was "final and valid", and the Co-op Board would not transfer title to the Co-op Unit based upon its view that Plaintiff had engaged in a "non-judicial foreclosure sale," and, therefore, the Co-op Board could restrict the transfer of the shares.

30. The Co-op Board's interpretation of the events is anathema to the magnitude of the litigation before this Court, which amounted to a judicial foreclosure sale in every sense of the term.

**FIRST CLAIM FOR RELIEF**

31. Plaintiff restates and reiterates each and every allegation set forth above in paragraphs "1" through "30" as though fully set forth at length herein.

32. An actual and justiciable controversy exists between the Plaintiff and the Co-op Board regarding (i) whether the foreclosure process authorized by this Court multiple orders and spanning multiple bankruptcies constitutes a judicial foreclosure sale entitling Plaintiff to immediate transfer of the Co-op Unit; and (ii) whether the Co-op Board can and did act arbitrarily in denying the transfer of the Co-op Unit to Plaintiff without a proper or legitimate basis.

33. Throughout the exhaustive process, Plaintiff respected the implications of Debtor's multiple bankruptcy filings and proceeded to a foreclosure sale on January 31, 2020 only after stay relief was granted by this Court.

34. From the start, the foreclosure proceedings were subject to Bankruptcy Court oversight and jurisdiction, and the Debtor was offered multiple opportunities to either pay the Loan or show cause as to why the automatic stay should be continued.

35. The Debtor failed to take advantage of these opportunities, prompting the Court to grant Plaintiff authorization to foreclose.

36. Moreover, Plaintiff even afforded the Co-op Board the opportunity to exercise a right of first refusal as a means to address any legitimate concerns relating to the

7

foreclosure process, as contemplated by the underlying proprietary lease. The Co-op Board, however, also declined the opportunity to purchase the Co-op Unit.

37. In view of all of the foregoing, the Co-op Board cannot arbitrarily impede the completion of a judicial foreclosure process (previously authorized by this Court) and summarily deny the transfer of the Co-op Unit to Plaintiff. To hold otherwise would unreasonably interfere with the economic value of Plaintiff's Collateral and jeopardize Plaintiff's ability to realize on his security interest.

38. The Co-op Board's purported rationale regarding a non-judicial sale lacks any merit, but, in any case, Plaintiff, in fact, proceeded under the auspices of the Bankruptcy Court, affording the Debtor all of the protections of a judicial foreclosure process.

39. That by reason of the foregoing, Plaintiff is entitled to Declaratory Judgment finding that Plaintiff exercised the rights of a secured creditor with due authority from this Court, and, therefore, Plaintiff is entitled to the transfer of the Co-op Unit without further delay.

## SECOND CLAIM FOR RELIEF

40. Plaintiff restates and reiterates each and every allegation set forth in paragraphs "1" through "39" above as though fully set forth at length herein.

41. The Co-op Board has, and continues to refuse to recognize the Plaintiff as the lawful owner of the Co-op Unit following the completion of the foreclosure sale on January 31, 2020 without just or proper reason.

42. The Co-op Board's refusal to recognize Plaintiff's rights as a foreclosing lienor is the product of arbitrary and capricious actions, and is not otherwise supported by any legitimate business propose.

43. The Co-op Board is obligated to act in good faith as it relates to the foreclosure process, consistent with the letter and spirt of the Recognition Agreement under which the Co-op Board acknowledged the Loan and the secured creditor's right as assignee, to realize upon the Collateral established thereunder.

44. Plaintiff has no adequate remedy at law.

45. By reason of the foregoing, Plaintiff is entitled to a Judgment of Specific Performance directing the Co-op Board to recognize the foreclosure process and transfer the Co-op Unit to Plaintiff by issuing a new stock certificate and proprietary lease to Plaintiff with respect to the Co-op Unit.

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

a. On the First Count, entry of declaratory judgment finding and establishing that Plaintiff exercised the rights of a secured creditor with due authority from this Court, and, therefore, Plaintiff is entitled to the transfer of the Co-op Unit without further delay;

b. On the Second Count, entry of a judgment for specific performance directing the Co-op Board to recognize the foreclosure process and issue a new stock certificate and proprietary lease to Plaintiff with respect to the Co-op Unit; and

c. Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 23, 2021

GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
*Attorneys for the Lender*
1501 Broadway, 22nd Floor
New York, New York 10036

By: /s/ Kevin J. Nash, Esq.